IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK HOUSTON,** | : | |
| Petitioner | : | No. 1:23-cv-01483 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **WARDEN F. GARZA,** | : | |
| Respondent | : | |

## MEMORANDUM

Currently before the Court is pro se Petitioner Derrick Houston ("Houston")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he claims that the Federal Bureau of Prisons ("BOP") failed to apply credit for time he served in pretrial federal confinement prior to his commencing his federal sentence. For the reasons stated below, the Court will dismiss the petition.

I.   BACKGROUND

A.   Houston's Relevant Criminal History

On February 19, 2001, Houston robbed and assaulted an employee of a package store located in Mississippi while possessing a firearm. See Houston v. State, 887 So. 2d 808, 811 (Miss. Ct. App. 2004) ("Houston I"); (Doc. Nos. 2 at 1; 13-1 at 4, 10, 12). A jury sitting in the Lauderdale County Circuit Court in Meridian, Mississippi found him guilty of robbery by use of a deadly weapon and aggravated assault on June 20, 2022. See Houston I, 887 So. 2d at 812; Houston v. Kelly, No. 06-cv-00085, 2007 WL 609921, at *1 (S.D. Miss. Jan. 19, 2007) ("Houston II"); (Doc. No. 13-1 at 4, 10, 12).[1]  On the same date, Houston was sentenced to an

---

[1] As explained infra, Houston fails to accurately account for his criminal history in his habeas petition and supporting memorandum of law. For instance, Houston does not mention his conviction for aggravated assault in his habeas petition or that his robbery conviction involved his use of a deadly weapon. See (Doc. No. 2 at 1 (describing Mississippi conviction as only a

aggregate term of twenty years' state incarceration. See Houston I, 887 So. 2d at 811; Houston II, 2007 WL 609921, at *1; (Doc. No. 13-1 at 4, 13).[2] The trial court also determined that Houston would receive pretrial credit of one hundred and forty-two days of pretrial confinement, meaning that his sentence effectively commenced on January 29, 2002. See (Doc. No. 13-1 at 13).

While incarcerated pursuant to his Mississippi sentence, Houston pleaded guilty to felony escape on October 4, 2002, and the Lauderdale County Circuit Court sentenced him to one year of incarceration, which was to run consecutive to his twenty-year sentence. See (id. at 14–15). Then, on December 5, 2005, Houston was sentenced to an aggregate term of twenty years' incarceration by the Warren County Circuit Court in Bowling Green, Kentucky. See (id. at 2, 17–18). This sentence was ordered to run consecutively to his Mississippi sentences, which Houston was still serving. See (id. at 2, 18).

On October 20, 2006, Houston pleaded guilty to three counts of armed robbery in the Eighteenth Judicial Circuit Court in the County of Du Page, Illinois. See (id. at 21–22). He was sentenced to fifteen years' incarceration, which was to run concurrently to his Mississippi sentences. See (id. at 21). He was also ordered to receive pretrial custody credit starting on December 19, 2001. See (id.).

---

robbery conviction). Overall, the only state-court conviction he describes in his memorandum of law is his Mississippi robbery conviction. See (id.).

[2] Houston asserts that he received an aggregate term of confinement for twenty-one years in his petition (Doc. No. 2 at 1), which is belied by the records produced by Respondent as well as the public records relating to his Mississippi criminal case showing that he received a twenty-year sentence for his robbery and aggravated assault convictions.

On October 8, 2020, while still serving his Mississippi sentences in the Mississippi Department of Corrections ("MDOC"), a grand jury in the United States District Court for the Northern District of Mississippi returned a second superseding indictment charging Houston and several other individuals, all alleged to be members of the Gangster Disciples, with racketeering conspiracy. See United States v. Houston, No. 19-cr-00065-11 (N.D. Miss. filed Oct. 8, 2020) ("Houston III"), ECF No. 305; (Doc. No. 13-1 at 24–40).[3]  Twenty days later, on October 28, 2020, Houston was transferred from Mississippi to the temporary custody of the United States Marshals Service ("USMS") through a writ of habeas corpus ad prosequendum to address his racketeering conspiracy charges in the Northern District of Mississippi. See (Doc. No. 13-1 at 4, 46–48). While still in USMS custody, Houston pleaded guilty to conspiracy to commit racketeering activity (18 U.S.C. §§ 1962(d), 1963), and the Northern District of Mississippi sentenced him on October 5, 2022, to an aggregate sentence of two-hundred months' imprisonment, which was to run concurrently to his Kentucky sentence. See Houston III, ECF No. 522 at 2. There was no reference to any of Houston's other state sentences in the criminal judgment. See id.

On November 4, 2022, Houston was returned to the custody of the MDOC, with his federal judgment lodged as a detainer. See (Doc. No. 13-1 at 5, 46). On January 24, 2023, Houston satisfied his Mississippi state sentences, but he was released to the streets instead of being turned over to the custody of Kentucky authorities to start serving his Kentucky state sentence. See (id. at 5, 10, 17, 46, 47, 59, 62). He was later arrested and taken into custody by

---

[3] The Court takes judicial notice of the docket in Houston's underlying federal criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

the USMS on February 1, 2023. See (id. at 5, 46, 47). According to the BOP's inmate locator (https://www.bop.gov/inmateloc/), Houston has an anticipated release date of November 18, 2033.

B. **Procedural History**

Houston commenced the instant action by filing a Section 2241 habeas petition and a supporting memorandum of law, both of which were docketed by the Clerk of Court on September 7, 2023. (Doc. Nos. 1, 2.)[4] On November 15, 2023, the Court issued an Order which, inter alia, directed Respondent to file a response to Houston's Section 2241 petition. (Doc. No. 6.) After receiving two extensions of time to file his response, Respondent timely filed a response in opposition to Houston's habeas petition on February 5, 2024. (Doc. No. 13.) Houston never filed a reply brief in further support of his petition; therefore, his Section 2241 petition is ripe for disposition.

II. **LEGAL STANDARDS**

A. **Section 2241 Habeas Petitions**

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal

---

[4] Houston neither remitted the filing fee nor sought leave to proceed in forma pauperis when he filed his habeas petition; as such, an Administrative Order issued on September 7, 2023, requiring him to either pay the fee or file an application for leave to proceed in forma pauperis within thirty days or risk dismissal of the case. (Doc. No. 4.) After more than thirty days passed without Houston responding to the Administrative Order, the Court issued an Order dismissing the case without prejudice on October 16, 2023. (Doc. No. 5.) However, on October 27, 2023, the Clerk of Court received the $5 filing fee. See (Unnumbered Docket Entry Between Doc. Nos. 5 & 6). Because Houston paid the fee, the Court issued an Order directing the Clerk of Court to reopen the case. (Doc. No. 6.)

prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

      B.      **Exhaustion of Administrative Remedies Under Section 2241**

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761–62 (citations omitted)). Exhaustion is not required when it would not promote these goals. See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and internal quotation marks omitted)). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to

5

prevent irreparable harm.'" Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

### C. The Federal Bureau of Prisons' Administrative Remedy Program[5]

The Federal Bureau of Prisons ("BOP") has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of [their] confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response to this appeal is due within twenty (20) calendar days; however, the time for a response may be extended by twenty (20) days. See id. § 542.18.

---

[5] The Court takes judicial notice of the BOP's Administrative Remedy Program, which is available on the BOP's website at https://www.bop.gov/policy/progstat/1330_018.pdf. See, e.g., Baptiste v. Morris, No. 18-cv-01484, 2020 WL 2745739, at *2 n.5 (M.D. Pa. May 27, 2020) (taking judicial notice of BOP's Administrative Remedy Program).

### III.     DISCUSSION

#### A.     The Parties' Arguments

Houston claims that he is entitled to have the BOP credit him for spending twenty-five months (from October 2020 until November 2022) in federal pretrial confinement.  See (Doc. Nos. 1 at 6; 2 at 1).  He asserts that "[r]elevant" to his petition "is the fact that on or about July 2021[,] the Miss[issippi] Legisters [sic] passed House Bill 2795," which "gave retroactive applicability to Miss[issippi] State inmates whom [sic] were serving state sentences for violent crimes."  See (Doc. No. 2 at 1).  Houston claims that this legislation caused his Mississippi state sentence to be "updated and recalculated to reflect" a fifty percent cut, meaning that his aggregate twenty-one-year Mississippi sentence was satisfied even before he was transferred from the custody of the MDOC to the USMS in October 2020.  See (id. at 1–2).  He also claims that the twenty-five months he spent in USMS pretrial custody has yet to be applied to any sentence, and he therefore seeks an order directing the BOP to apply twenty-five months of pretrial time credit to his current federal sentence.  See (id.).

In his response in opposition to Houston's habeas petition, Respondent argues that the Court should dismiss the petition because Houston failed to exhaust the BOP's administrative remedy procedures before filing his habeas petition insofar as he never filed any administrative remedy relating to his claim for twenty-five months of time credit.  See (Doc. No. 13 at 7–9); see also (Doc. No. 13-1 at 6, 77–82).  Alternatively, Respondent contends that the Court should deny the petition because the BOP properly calculated Houston's federal sentence by commencing it on the date he was first taken into federal custody following his sentencing, i.e., February 1, 2023, and he is not entitled to any credit for time he spent in the custody of the USMS pursuant to a writ of habeas corpus ad prosequendum.  See (id. at 10–14).

B.     Analysis

The Court agrees with Respondent that Houston failed to exhaust his administrative remedies before filing his habeas petition and, as such, will dismiss his petition. Houston concedes that he failed to exhaust his administrative remedies but claims he did not have to do so because his "trial counsel and/or the court never even mentioned the 25 months during sentencing. Therefore, it is not the BOP's fault[,] and it is [sic] no way possible that the BOP could apply said time credit without a court first acknowledging [the] 25 months . . . ." See (Doc. No. 2 at 2).

Houston is mistaken about the BOP's role in addressing time credit or sentencing-calculation issues:

> While [the petitioner] is correct that the BOP must heed the sentencing court's orders, the type of claim he is raising (alleged improper application of prior jail credit) is the precise type of claim that must be presented to BOP officials before seeking habeas relief in federal court. Such nuanced and fact-specific sentencing questions are well within the purview of the BOP, which is best situated to address (and potentially correct) these issues in the first instance.

See Hamrick v. Warden of FCI-Allenwood Low, No. 23-cv-00567, 2023 WL 7413330, at *1 (M.D. Pa. Nov. 9, 2023); see also Goodman v. Grondolsky, 427 F. App'x 81, 82 (3d Cir. 2011) (unpublished) (explaining that the "authority to calculate a federal sentence and provide credit for time served . . . [belongs] to the Attorney General, who acts through the BOP" (citing United States v. Wilson, 503 U.S. 329, 333–35 (1992))). Furthermore, Houston's "failure to exhaust his sentencing-calculation claim deprives this Court of a properly developed record for review." See Hamrick, 2023 WL 7413330, at *1 (citing Donnelly v. Fed. Bureau of Prisons, No. 10-cv-03105, 2012 WL 2357511, at *4–5 (D. Minn. May 30, 2012), report and recommendation adopted, 2012 WL 2357490 (D. Minn. June 20, 2012)). Accordingly, the Court will dismiss Houston's sentencing-calculation claim due to his failure to exhaust administrative remedies.

The Court notes that even the Court addressed Houston's claim on its merits, it would deny the claim.[6] "In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence." Goodman, 427 F. App'x at 82 (citing 18 U.S.C. § 3585). A federal sentence "commences when the defendant is received by the Attorney General for service of [their] federal sentence." See Rashid v. Quintana, 372 F. App'x 260, 262–63 (3d Cir. 2010) (unpublished) (citing 18 U.S.C. § 3585(a)). "As a result, a federal sentence cannot begin to run earlier than on the date on which it is imposed." Id.; see also Taylor v. Holt, 309 F. App'x 591, 592–93 (3d Cir. 2009) (unpublished). Stated differently, "the earliest possible date a federal sentence may commence is the date it was imposed." See Pitts v. Spaulding, No. 15-cv-00644, 2015 WL 8482041, at *4 (M.D. Pa. Dec. 10, 2015) (internal quotation marks omitted).

---

[6] As Respondent point out, this Court would lack subject-matter jurisdiction to determine whether Houston was over-incarcerated in the Mississippi Department of Corrections. See (Doc. No. 13 at 14 n.3). The Court nevertheless notes that Houston's assertion that he received a benefit of "cutting" fifty percent from his sentence under Mississippi's Parole Eligibility Act ("MPEA"), which was codified at Miss. Code § 47-7-3, and took effect on July 1, 2021, is questionable.

Although the MPEA's enactment undoubtedly provided new avenues for parole to previously ineligible Mississippi state inmates, it specifically excludes individuals like Houston, who were convicted of robbery with a deadly weapon (as defined in Miss. Code § 97-3-79), see (Doc. No. 13-1 at 13 (indicating that Houston was convicted for violating Section 97-3-79)), from receiving eligibility for parole "only after having served fifty percent (50%) or twenty (20) years, whichever is less, of the sentence or sentences imposed by the trial court." See Miss. Code § 47-7-3(h)(i). Instead, Houston would have been "eligible for parole only having served sixty (60%) or twenty-five (25) years, whichever is less, of the sentence or sentences imposed by the trial court." See id. Moreover, and most importantly, the MPEA does not affect the length of a Mississippi prisoner's original sentence; rather, it merely renders them eligible for parole after a certain period of incarceration. See id. In other words, Houston would have potentially benefitted from the MPEA by becoming eligible for parole after serving sixty percent of his twenty-one-year aggregate sentence; however, it did not "cut" into the total term of his incarceration. And it appears that Mississippi parole officials determined that Houston was not suitable for parole insofar as he ultimately served the entirety of his twenty-one-year aggregate sentence. See (Doc. No. 13-1 at 62).

With those principles in mind, the BOP could not commence Houston's federal sentence at any point earlier than its date of imposition on October 5, 2022. See Rashid, 372 F. App'x at 262; see also Proctor v. Finley, No. 19-cv-00630, 2020 WL 618621, at *3 (M.D. Pa. Feb. 10, 2020) ("A federal sentence cannot commence earlier than the date on which it was imposed." (citing Rashid, 372 F. App'x at 262)). However, at that point, Houston had not completed his Mississippi sentence. As such, the USMS returned him to Mississippi authorities so he could serve out the remainder of his Mississippi state sentence and lodged a detainer for when the MDOC ultimately released him. Therefore, the BOP could not commence Houston's sentence until the USMS arrested him on February 1, 2023.

Moreover, a federal sentence does not begin to run when a federal defendant such as Houston is produced from state custody pursuant to a federal writ of habeas corpus from non-federal custody because, in such a situation, the state authorities retain primary custody over the prisoner. See Holloman v. Warden Fairton FCI, 635 F. App'x 12, 14 (3d Cir. 2015) (unpublished) ("The production of a defendant pursuant to a writ of habeas corpus ad prosequendum does not affect the jurisdiction of the sovereign with primary custody over a defendant."); Taccetta v. Federal Bureau of Prisons, 606 F. App'x 661, 663 (3d Cir. 2015) (unpublished) (finding that under the primary custody doctrine, the first sovereign to arrest the defendant is entitled to have the defendant serve that sovereign's sentence before one imposed by another sovereign). The BOP could not apply the months Houston spent in pretrial custody with the USMS to the term of his federal sentence because Mississippi retained primary custody over him until he completed his sentence there. Houston also could not receive credit for time served if it was credited towards another sentence, see 18 U.S.C. § 3585(b), and Houston's time spent in federal pretrial custody was credited towards his Mississippi sentence. Accordingly, even if the

Court addressed the merits of Houston's sentencing-calculation claim, it would deny the claim as meritless because it appears that the BOP properly calculated his federal sentence.

## IV.  CONCLUSION

For the reasons stated above, the Court will dismiss Houston's Section 2241 habeas petition and direct the Clerk of Court to close this case.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
